# In the United States Court of Federal Claims

No. 14-61C
Filed: April 1, 2015

| | |
|---|---|
| * * * * * * * * * * * * * * *<br>**PAULINE M. STATHIS, et al.,**<br>　　　　　　　**Plaintiffs,**<br>　　v.<br>**UNITED STATES,**<br>　　　　　　　**Defendant.**<br>* * * * * * * * * * * * * * * | Partial Summary Judgment; Settlement Agreement; Contract Interpretation. |

**Patrick James Attridge**, King & Attridge, Rockville, MD, for plaintiffs.

**Ryan M. Majerus**, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C., for defendant. With him were **Robert E. Kirschman, Jr.**, Director, Commercial Litigation Branch and **Benjamin C. Mizer**, Acting Assistant Attorney General, Civil Division.

## O P I N I O N

Plaintiffs[1] filed a complaint in this court, and subsequently filed an amended complaint, alleging breach of contract of a settlement agreement entered into with the United States to settle a medical malpractice claim. Plaintiffs allege that the United States breached a settlement agreement it had entered into with Pauline M. Stathis and Gus J. Stathis, individually, and as parents for Christina Stathis, which included in its award to plaintiffs a $90,000.00 yearly payment to be provided through an annuity purchased to "result in a distribution on behalf of the United States." Plaintiffs allege that "[t]he United States promised that as of January 2014 (i.e., more than twenty-six (26) years after the purchase of the annuity), yearly payments in the amount of $90,000 'will be paid to' Plaintiffs for the remainder of the natural life of Christina Stathis." According to the complaint, defendant breached its contract when the 2014 payment was reduced to $38,151.00. Defendant argues that "the undisputed material facts show that the United States under the settlement agreement only agreed to purchase the annuity . . . [and] did

---

[1] Plaintiffs include Pauline M. Stathis, individually and as guardian for Christina M. Stathis, and Gus J. Stathis and Pauline M. Stathis, trustees of the Christina M. Stathis Special Needs Trust.

not agree to guarantee all future payments to be made by that annuity." Neither party denies that a binding contract was entered into by plaintiffs and defendant; the dispute is about the terms of the agreement. The parties each filed a motion for partial summary judgment. Plaintiffs ask the court to find the defendant in breach of the settlement agreement. Defendant asks the court to dismiss plaintiffs' complaint.

### FINDINGS OF FACT

In 1981, plaintiff Christina Stathis suffered severe injuries during her birth at Walter Reed Army Medical Center. In 1984, Christina's parents, Gus and Pauline Stathis, filed a complaint in the United States District Court for the District of Columbia under the Federal Tort Claims Act (FTCA), 28 U.S.C. §§ 1346, 2671–80 (1982), alleging medical malpractice. According to the complaint, on or about December 13, 1985, the United States government entered into a settlement agreement with plaintiffs, "wherein in exchange for a release and discharge of the United States, the Stathises accepted monetary awards from the United States." In addition to paying a sum of $245,000.00, the government agreed to purchase an annuity from an insurance company, having an A+ financial rating in Class XI or higher, according to the A.M. Best Company, through JMW Settlements, Inc. The government drafted the settlement agreement, which provides that "[t]he annuity will be owned solely and exclusively by the UNITED STATES, and will result in a distribution on behalf of the UNITED STATES according to the following specified plan." (capitalization in original). The payment plan included in the settlement agreement provides that the following amounts "will be paid": five yearly payments of $40,000.00 commencing one year after purchase of the annuity; five yearly payments of $50,000.00 commencing six years after purchase; five yearly payments of $60,000.00 commencing eleven years after purchase; five yearly payments of $70,000.00 commencing sixteen years after purchase; five yearly payments of $80,000.00 commencing twenty-one years after purchase; and "[c]ommencing twenty-six (26) years after the purchase of the annuity, yearly payments in the amount of ninety thousand and 00/100 Dollars ($90,000.00) per year will be paid . . . for the remainder of the natural life of Christina Stathis." The settlement agreement reads:

> In consideration of the purchase of the annuity, and payment of the lump sum . . . , Claimants hereby release and forever discharge the UNITED STATES, its officers, agents, and employees from all liability, claims, and demands of whatsoever nature arising from the care and treatment of Pauline M. Stathis and Christina Stathis at Walter Reed Army Medical Center, and claimants agree to indemnify and save harmless the UNITED STATES from any and all other claims, actions, or proceedings which may hereafter be asserted or brought by or on behalf of Claimants, their heirs, executors, administrators, assigns or successors in interest, or any other person or organization, to recover for personal injuries or death, or for contribution or indemnity, arising out of or related to the care and treatment of Pauline M. Stathis and Christina Stathis at Walter Reed Army Medical Center.

(capitalization in original). In a Stipulation of Dismissal agreed to by the parties and entered by the United States District Court for the District of Columbia, the parties "adopt[ed] all of the terms of the Settlement Agreement."

Defendant purchased an annuity from Executive Life Insurance Company of New York (ELNY) on or about January 14, 1986 by issuing a check for $675,851.00, payable to JMW Settlements, Inc.[2] As required by the settlement agreement, ELNY had an A+ rating at the time of purchase. The United States District Court for the District of Columbia filed a "RECEIPT," (capitalization in original) signed by JMW Settlements, Inc., acknowledging receipt of a check from the government in the amount of $675,851.00, "which, pursuant to the Court's Order and Settlement Agreement filed December 16, 1985, fully discharges the defendant's obligation to plaintiffs for payment of money in consideration of the Order and the Agreement." Plaintiffs received the annual payments as outlined in the settlement agreement from January 15, 1987 until January 15, 2013.

The settlement agreement was amended on May 7, 2000 to provide for payments to be made to the Christina M. Stathis Special Needs Trust, instead of directly to Gus and Pauline Stathis, and was signed by plaintiffs and defendant. This "AMENDMENT TO ORIGINAL SETTLEMENT AGREEMENT" (capitalization in original) stated:

> IT IS HEREBY STIPULATED AND AGREED that the United States of America, as owner of the annuity contract under which the requisite periodic payments will be made, shall cause the future periodic payments to be redirected to the Christina M. Stathis Special Needs Trust . . .
>
> IT IS FURTHER AGREED AND UNDERSTOOD that this Amended Settlement Agreement does not alter the parties' obligations or overall payment amounts as reflected in the original Settlement Agreement, and does not replace the original Settlement Agreement.
>
> Provider [sic] further, that as consideration for the amended terms reflected herein, Pauline M. Stathis will indemnify and hold harmless the United States of America, its authorized agents and employees, for any claims that may arise out of, or on account of, the redirection of the payments to the Christina M. Stathis Special Needs Trust.

(capitalization in original).

---

[2] The $675,851.00 payment from the government was broken down as follows: $424,861.33 paid for the ELNY annuity; $245,000.00 allocated as an upfront payment, composed of a $77,534.67 payment to plaintiffs and $167,465.33 to be paid in attorney's fees; and $5,990.67 to be refunded to the government as an overpayment. The allocation, described in a letter from JMW Settlements, Inc. to the United States General Accounting Office, does not quite add up. The sum of the sub-amounts equals $675,852.00.

3

On April 16, 2012, ELNY was found to be insolvent by the Supreme Court of the State of New York (Nassau County), which issued a Memorandum Decision and Order of Liquidation and Approval of the ELNY Restructuring Agreement. A letter from the New York Liquidation Bureau, sent to Christina Stathis on May 18, 2012, enclosed the court documents and stated:

> [t]he Court has directed the New York Superintendent of Financial Services to liquidate ELNY's business and affairs in substantially the manner provided in the Restructuring Agreement, about which you were previously informed. At such time as the Superintendent implements the Restructuring Agreement, the obligation to pay benefits under your ELNY annuity contract at the benefit level described in the December 7, 2011 letter will be transferred from ELNY to Guaranty Association Benefits Company.

The letter also informed Christina of her eligibility "to apply for financial assistance from the $100 million ELNY Hardship Fund ("Fund"), a voluntary initiative of the life insurance industry created to assist ELNY payees who will experience a reduction in benefit payments upon implementation of the Restructuring Agreement."

A December 10, 2013 letter from the Guaranty Association Benefits Company (GABC) to Pauline Stathis, on behalf of Christina Stathis, informed the Stathis family of a change in benefits under the settlement agreement. They would "receive the following payment annually: $38,151.00 with benefit due on 01/15/2013 [sic] and then on the 15th of each January for your lifetime."[3] Plaintiffs sent defendant letters through counsel dated December 6, 2013 and December 17, 2013, alerting the government to the anticipated $51,849.00 shortfall. In a December 30, 2013 letter to plaintiffs' counsel from Larry Eiser, Senior Trial Counsel with the United States Department of Justice, Civil Division, Torts Branch, the United States denied any obligation to make up the shortfall. On or about January 15, 2014, plaintiffs received a $38,151.00 payment from GABC. Thereafter, plaintiffs filed suit against defendant in this court, claiming breach of contract, and requesting relief in the amount of $51,849.00, to compensate for the 2014 payment shortfall, plus a lump sum amount equal to the present value of the future annuity shortfalls. Plaintiffs and defendant each filed a motion for partial summary judgment. Plaintiffs argue that the government should be found liable for breach of contract. Defendant asks the court to dismiss plaintiffs' complaint and enter judgment in favor of the government.

## DISCUSSION

Rule 56 of the Rules of the United States Court of Federal Claims (RCFC) (2014) is similar to Rule 56 of the Federal Rules of Civil Procedure in language and effect. Both

---

[3] The court notes that "01/15/2013" seems to be an error, given that the letter informing Pauline Stathis of the benefit information was dated December 10, 2013, approximately eleven months after the purported start date. Moreover, plaintiffs acknowledge that the $38,151.00 payments to the family began "[o]n or about January 15, 2014."

rules provide that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." RCFC 56(a); Fed. R. Civ. P. 56(a) (2014); see also Alabama v. North Carolina, 560 U.S. 330, 344 (2010); Hunt v. Cromartie, 526 U.S. 541, 549 (1999); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986); Adickes v. S. H. Kress & Co., 398 U.S. 144, 157 (1970); Biery v. United States, 753 F.3d 1279, 1286 (Fed. Cir.), reh'g and reh'g en banc denied (Fed. Cir. 2014); Ladd v. United States, 713 F.3d 648, 651 (Fed. Cir. 2013); Minkin v. Gibbons, P.C., 680 F.3d 1341, 1349 (Fed. Cir. 2012); Noah Sys., Inc. v. Intuit Inc., 675 F.3d 1302, 1309-10 (Fed. Cir. 2012); Advanced Fiber Techs. (AFT) Trust v. J & L Fiber Servs., Inc., 674 F.3d 1365, 1372 (Fed. Cir.), reh'g and reh'g en banc denied (Fed. Cir. 2012); Fujitsu Ltd. v. Netgear Inc., 620 F.3d 1321, 1325 (Fed. Cir.), reh'g denied (Fed. Cir. 2010); Consol. Coal Co. v. United States, 615 F.3d 1378, 1380 (Fed. Cir.), reh'g and reh'g en banc denied (Fed. Cir. 2010), cert. denied, 131 S. Ct. 2990 (2011); 1st Home Liquidating Trust v. United States, 581 F.3d 1350, 1355 (Fed. Cir. 2009); Arko Exec. Servs., Inc. v. United States, 553 F.3d 1375, 1378 (Fed. Cir. 2009); Casitas Mun. Water Dist. v. United States, 543 F.3d 1276, 1283 (Fed. Cir. 2008), reh'g and reh'g en banc denied, 556 F.3d 1329 (Fed. Cir. 2009); Moden v. United States, 404 F.3d 1335, 1342 (Fed. Cir.), reh'g and reh'g en banc denied (Fed. Cir. 2005); Am. Pelagic Fishing Co., L.P. v. United States, 379 F.3d 1363, 1370-71 (Fed. Cir.), reh'g en banc denied (Fed. Cir. 2004), cert. denied, 545 U.S. 1139 (2005); Mata v. United States, 114 Fed. Cl. 736, 744 (2014); Leggitte v. United States, 104 Fed. Cl. 315, 317 (2012); Arranaga v. United States, 103 Fed. Cl. 465, 467-68 (2012); Cohen v. United States, 100 Fed. Cl. 461, 469 (2011); Boensel v. United States, 99 Fed. Cl. 607, 610 (2011).

A fact is material if it will make a difference in the result of a case under the governing law. See Anderson v. Liberty Lobby, Inc., 477 U.S. at 248; see also Marriott Int'l Resorts, L.P. v. United States, 586 F.3d 962, 968 (Fed. Cir. 2009) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. at 248); Mata v. United States, 114 Fed. Cl. at 744; Arranaga v. United States, 103 Fed. Cl. at 467-68; Thompson v. United States, 101 Fed. Cl. 416, 426 (2011); Cohen v. United States, 100 Fed. Cl. at 469. Irrelevant or unnecessary factual disputes do not preclude the entry of summary judgment. See Anderson v. Liberty Lobby, Inc., 477 U.S. at 247-48; see also Scott v. Harris, 550 U.S. 372, 380 (2007); Monon Corp. v. Stoughton Trailers, Inc., 239 F.3d 1253, 1257 (Fed. Cir. 2001); Gorski v. United States, 104 Fed. Cl. 605, 609 (2012); Walker v. United States, 79 Fed. Cl. 685, 692 (2008); Curtis v. United States, 144 Ct. Cl. 194, 199, 168 F. Supp. 213, 216 (1958), cert. denied, 361 U.S. 843 (1959), reh'g denied, 361 U.S. 941 (1960).

When reaching a summary judgment determination, the judge's function is not to weigh the evidence and determine the truth of the case presented, but to determine whether there is a genuine issue for trial. See Anderson v. Liberty Lobby, Inc., 477 U.S. at 249; see, e.g., Schlup v. Delo, 513 U.S. 298, 332 (1995); Ford Motor Co. v. United States, 157 F.3d 849, 854 (Fed. Cir. 1998) ("Due to the nature of the proceeding, courts do not make findings of fact on summary judgment."); TigerSwan, Inc. v. United States, 118 Fed. Cl. 447, 451 (2014); Dana R. Hodges Trust v. United States, 111 Fed. Cl. 452, 455 (2013); Cohen v. United States, 100 Fed. Cl. at 469-70; Boensel v. United States, 99 Fed. Cl. at 611; Macy Elevator, Inc. v. United States, 97 Fed. Cl. 708, 717 (2011); Dick Pacific/GHEMM, JV ex rel. W.A. Botting Co. v. United States, 87 Fed. Cl. 113, 126 (2009);

5

Johnson v. United States, 49 Fed. Cl. 648, 651 (2001), aff'd, 52 F. App'x 507 (Fed. Cir. 2002), published at 317 F.3d 1331 (Fed. Cir. 2003). The judge must determine whether the evidence presents a disagreement sufficient to require submission to fact finding, or whether the issues presented are so one-sided that one party must prevail as a matter of law. See Anderson v. Liberty Lobby, Inc., 477 U.S. at 250-52; Jay v. Sec'y of Dep't of Health and Human Servs., 998 F.2d 979, 982 (Fed. Cir.), reh'g denied and en banc suggestion declined (Fed. Cir. 1993); Leggitte v. United States, 104 Fed. Cl. at 316. When the record could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial, and the motion must be granted. See, e.g., Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Advanced Fiber Techs. (AFT) Trust v. J & L Fiber Servs., Inc., 674 F.3d at 1372; Marriott Int'l Resorts, L.P. v. United States, 586 F.3d at 968; Am. Seating Co. v. USSC Grp., Inc., 514 F.3d 1262, 1266 (Fed. Cir.), reh'g en banc denied (Fed. Cir. 2008); Rothe Dev. Corp. v. U.S. Dep't of Def., 262 F.3d 1306, 1316 (Fed. Cir. 2001); Hall v. Aqua Queen Mfg., Inc., 93 F.3d 1548, 1553 n.3 (Fed. Cir. 1996). In such cases, there is no need for the parties to undertake the time and expense of a trial, and the moving party should prevail without further proceedings.

In appropriate cases, summary judgment:

saves the expense and time of a full trial when it is unnecessary. When the material facts are adequately developed in the motion papers, a full trial is useless. "Useless" in this context means that more evidence than is already available in connection with the motion for summary judgment could not reasonably be expected to change the result.

Dehne v. United States, 23 Cl. Ct. 606, 614-15 (1991) (quoting Pure Gold, Inc. v. Syntex, (U.S.A.) Inc., 739 F.2d 624, 626 (Fed. Cir. 1984)), vacated on other grounds, 970 F.2d 890 (Fed. Cir. 1992) (citation omitted); see also Vivid Techs., Inc. v. Am. Sci. & Eng'g, Inc., 200 F.3d 795, 806 (Fed. Cir. 1999) ("The purpose of summary judgment is not to deprive a litigant of a trial, but to avoid an unnecessary trial when only one outcome can ensue."); Metric Constr. Co., Inc. v. United States, 73 Fed. Cl. 611, 612 (2006).

Summary judgment, however, will not be granted if "the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable [trier of fact] could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. at 248; see also Long Island Sav. Bank, FSB v. United States, 503 F.3d 1234, 1244 (Fed. Cir.), reh'g and reh'g en banc denied (Fed. Cir. 2007), cert. denied, 555 U.S. 812 (2008); Eli Lilly & Co. v. Barr Labs., Inc., 251 F.3d 955, 971 (Fed. Cir.), reh'g and reh'g en banc denied (Fed. Cir. 2001), cert. denied, 534 U.S. 1109 (2002); Gen. Elec. Co. v. Nintendo Co., 179 F.3d 1350, 1353 (Fed. Cir. 1999); TigerSwan, Inc. v. United States, 118 Fed. Cl. at 451; Stephan v. United States, 117 Fed. Cl. 68, 70 (2014); Gonzales-McCaulley Inv. Group, Inc. v. United States, 101 Fed. Cl. 623, 629 (2011). In other words, if the nonmoving party produces sufficient evidence to raise a question as to the outcome of the case, then the motion for summary judgment should be denied. Any doubt over factual issues must be resolved in favor of the party opposing summary judgment, to whom the benefit of all presumptions and inferences runs. See Ricci v. DeStefano, 557 U.S. 557, 586 (2009); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. at 587-88; Yant v. United

States, 588 F.3d 1369, 1371 (Fed. Cir. 2009), cert. denied, 131 S. Ct. 69 (2010); Dethmers Mfg. Co. v. Automatic Equip. Mfg. Co., 272 F.3d 1365, 1369 (Fed. Cir. 2001), reh'g and reh'g en banc denied, 293 F.3d 1364 (Fed. Cir. 2002), cert. denied, 539 U.S. 957 (2003); Monon Corp. v. Stoughton Trailers, Inc., 239 F.3d at 1257; Wanlass v. Fedders Corp., 145 F.3d 1461, 1463 (Fed. Cir.), reh'g denied and en banc suggestion declined (Fed. Cir. 1998); see also Am. Pelagic Co. v. United States, 379 F.3d at 1371 (citing Helifix Ltd. v. Blok-Lok, Ltd., 208 F.3d 1339, 1345-46 (Fed. Cir. 2000)); Dana R. Hodges Trust v. United States, 111 Fed. Cl. at 455; Boensel v. United States, 99 Fed. Cl. at 611 ("'The evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor.'" (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. at 255) (citing Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. at 587-88; Casitas Mun. Water Dist. v. United States, 543 F.3d at 1283; Lathan Co. Inc. v. United States, 20 Cl. Ct. 122, 125 (1990))); see also Am. Seating Co. v. USSC Grp., Inc., 514 F.3d at 1266-67; Vivid Techs., Inc. v. Am. Sci. & Eng'g, Inc., 200 F.3d at 807. "However, once a moving party satisfies its initial burden, mere allegations of a genuine issue of material fact without supporting evidence will not prevent entry of summary judgment." Republic Sav. Bank, F.S.B. v. United States, 584 F.3d 1369, 1374 (Fed. Cir. 2009); see also Anderson v. Liberty Lobby, Inc., 477 U.S. at 247-48.

The initial burden on the party moving for summary judgment to produce evidence showing the absence of a genuine issue of material fact may be discharged if the moving party can demonstrate that there is an absence of evidence to support the nonmoving party's case. See Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986); see also Riley & Ephriam Constr. Co. v. United States, 408 F.3d 1369, 1371 (Fed. Cir. 2005); Crown Operations Int'l Ltd. v. Solutia Inc., 289 F.3d 1367, 1377 (Fed. Cir.), reh'g denied (Fed. Cir. 2002); Trilogy Commc'ns, Inc. v. Times Fiber Commc'ns, Inc., 109 F.3d 739, 741 (Fed. Cir.) (quoting Conroy v. Reebok Int'l, Ltd., 14 F.3d 1570, 1575 (Fed. Cir. 1994), reh'g denied and en banc suggestion declined (Fed. Cir. 1995)), reh'g denied and en banc suggestion declined (Fed. Cir. 1997); Lockwood v. Am. Airlines, Inc., 107 F.3d 1565, 1569 (Fed. Cir. 1997); Vivid Techs., Inc. v. Am. Sci. & Eng'g, Inc., 200 F.3d at 807; RQ Squared, LLC v. United States, No. 12-527C, 2015 WL 170230, at *6 (Fed. Cl. Jan. 14, 2015). If the moving party makes such a showing, the burden shifts to the nonmoving party to demonstrate that a genuine dispute regarding a material fact exists by presenting evidence which establishes the existence of an element essential to its case upon which it bears the burden of proof. See Celotex Corp. v. Catrett, 477 U.S. at 322; see also Wavetronix LLC v. EIS Elec. Integrated Sys., 573 F.3d 1343, 1354 (Fed. Cir. 2009); Long Island Sav. Bank, FSB v. United States, 503 F.3d at 1244; Florida Power & Light Co. v. United States, 375 F.3d 1119, 1124 (Fed. Cir. 2004); Schoell v. Regal Marine Indus., Inc., 247 F.3d 1202, 1207 (Fed. Cir. 2001); Am. Airlines, Inc. v. United States, 204 F.3d 1103, 1108 (Fed. Cir. 2000); Vivid Techs., Inc. v. Am. Sci. & Eng'g, Inc., 200 F.3d at 807; Rasmuson v. United States, 109 Fed. Cl. 267, 271 (2013). However, "a non-movant is required to provide opposing evidence under Rule 56(e) only if the moving party has provided evidence sufficient, if unopposed, to prevail as a matter of law." Saab Cars USA, Inc. v. United States, 434 F.3d 1359, 1369 (Fed. Cir. 2006).

Even if both parties argue in favor of summary judgment and allege an absence of genuine issues of material fact, the court is not relieved of its responsibility to determine

the appropriateness of summary disposition in a particular case, and it does not follow that summary judgment should be granted to one side or the other. See Prineville Sawmill Co. v. United States, 859 F.2d 905, 911 (Fed. Cir. 1988) (citing Mingus Constructors, Inc. v. United States, 812 F.2d 1387, 1391 (Fed. Cir. 1987)); see also Marriott Int'l Resorts, L.P. v. United States, 586 F.3d 962, 968–69 (Fed. Cir. 2009); B.F. Goodrich Co. v. U.S. Filter Corp., 245 F.3d 587, 593 (6th Cir. 2001); Atl. Richfield Co. v. Farm Credit Bank of Wichita, 226 F.3d 1138, 1148 (10th Cir. 2000); Chevron USA, Inc. v. Cayetano, 224 F.3d 1030, 1037 n.5 (9th Cir. 2000), cert. denied, 532 U.S. 942 (2001); Bubble Room, Inc. v. United States, 159 F.3d 553, 561 (Fed. Cir. 1998) ("The fact that both the parties have moved for summary judgment does not mean that the court must grant summary judgment to one party or the other."), reh'g denied and en banc suggestion declined (Fed. Cir. 1999); Allstate Ins. Co. v. Occidental Int'l, Inc., 140 F.3d 1, 2 (1st Cir. 1998); Massey v. Del Labs., Inc., 118 F.3d 1568, 1573 (Fed. Cir. 1997); LewRon Television, Inc. v. D.H. Overmyer Leasing Co., 401 F.2d 689, 692 (4th Cir. 1968), cert. denied, 393 U.S. 1083 (1969); Rogers v. United States, 90 Fed. Cl. 418, 427 (2009), subsequent determination, 93 Fed. Cl. 607 (2010); Consol. Coal Co. v. United States, 86 Fed. Cl. 384, 387 (2009), aff'd, 615 F.3d 1378, (Fed. Cir.), and reh'g and reh'g en banc denied (Fed. Cir. 2010), cert. denied, 131 S. Ct. 2990 (2011); St. Christopher Assocs., L.P. v. United States, 75 Fed. Cl. 1, 8 (2006), aff'd, 511 F.3d 1376 (Fed. Cir. 2008); Reading & Bates Corp. v. United States, 40 Fed. Cl. 737, 748 (1998). The court must evaluate each party's motion on its own merits, taking care to draw all reasonable inferences against the party whose motion is under consideration, or, otherwise stated, in favor of the non-moving party. See First Commerce Corp. v. United States, 335 F.3d 1373, 1379 (Fed. Cir.), reh'g and reh'g en banc denied (Fed. Cir. 2003); see also DeMarini Sports, Inc. v. Worth, Inc., 239 F.3d 1314, 1322 (Fed. Cir. 2001); Gart v. Logitech, Inc., 254 F.3d 1334, 1338–39 (Fed. Cir.), reh'g and reh'g en banc denied (Fed. Cir. 2001), cert. denied, 534 U.S. 1114 (2002); Oswalt v. United States, 85 Fed. Cl. 153, 158 (2008); Telenor Satellite Servs., Inc. v. United States, 71 Fed. Cl. 114, 119 (2006).

Cross-motions are no more than a claim by each party that it alone is entitled to summary judgment. The making of such inherently contradictory claims, however, does not establish that if one is rejected the other necessarily is justified. See B.F. Goodrich Co. v. United States Filter Corp., 245 F.3d at 593; Atl. Richfield Co. v. Farm Credit Bank of Wichita, 226 F.3d at 1148; Allstate Ins. Co. v. Occidental Int'l, Inc., 140 F.3d at 2; Rogers v. United States, 90 Fed. Cl. at 427; Reading & Bates Corp. v. United States, 40 Fed. Cl. at 748.

"Questions of law are particularly appropriate for summary judgment." Oenga v. United States, 91 Fed. Cl. 629, 634 (2010) (citing Dana Corp. v. United States, 174 F.3d 1344, 1347 (Fed. Cir. 1999) ("Summary judgment was appropriate here [in Dana Corp.] because no material facts were disputed, many being stipulated, and the only disputed issues were issues of law. Moreover, on each issue one party or the other is entitled to judgment as a matter of law.")); see also Santa Fe Pac. R.R. v. United States, 294 F.3d 1336, 1340 (Fed. Cir. 2002) ("Issues of statutory interpretation and other matters of law may be decided on motion for summary judgment.").

8

This court has jurisdiction to review settlement agreements in the nature of a contract between a private citizen or business entity and the government because a settlement agreement is a contract. See Cunningham v. United States, 748 F.3d 1172, 1176 (Fed. Cir. 2014) ("We have long held that disputes over settlement agreements are governed by contract principles."); Slattery v. Dep't of Justice, 590 F.3d 1345, 1349 (Fed. Cir. 2010) ("Settlement agreement disputes are governed by contract principles."); Musick v. Dep't of Energy, 339 F.3d 1365, 1369 (Fed. Cir. 2003) ("A settlement agreement is a contract, the interpretation of which is a question of law."); Kasarsky v. Merit Sys. Prot. Bd., 296 F.3d 1331, 1336 (Fed. Cir. 2002) ("Disputes involving settlement agreements are governed by contract principles."); Greco v. Dep't of the Army, 852 F.2d 558, 560 (Fed. Cir. 1988) ("It is axiomatic that a settlement agreement is a contract.").

Contract interpretation is a question of law, which poses an appropriate question for summary judgment resolution. See UPI Semiconductor Corp. v. Int'l Trade Comm'n, 767 F.3d 1372, 1377 (Fed. Cir. 2014) (stating that contract interpretation is a question of law); First Annapolis Bancorp, Inc. v. United States, 644 F.3d 1367, 1373 (Fed. Cir. 2011), cert. denied, 132 S. Ct. 2102 (2012); H.B. Mac, Inc. v. United States, 153 F.3d 1338, 1345 (Fed. Cir. 1998) (stating that matters of contract interpretation are questions of law); see also Holland v. United States, 621 F.3d 1366, 1374 (Fed. Cir. 2010), cert. denied, 132 S. Ct. 365 (2011); Dalton v. Cessna Aircraft Co., 98 F.3d 1298, 1305 (Fed. Cir.), reh'g denied and en banc suggestion declined (Fed. Cir. 1996); Eden Isle Marina, Inc. v. United States, 113 Fed. Cl. 372, 483 (2013) (quoting Varilease Tech. Group, Inc. v. United States, 289 F.3d 795, 798 (Fed. Cir. 2002)); C.W. Over & Sons, Inc. v. United States, 54 Fed. Cl. 514, 520 (2002).

Contract interpretation starts with analysis of the language of the written agreement. See Precision Pine & Timber, Inc. v. United States, 596 F.3d 817, 824 (Fed. Cir. 2010), cert. denied, 131 S. Ct. 997 (2011); LAI Servs., Inc. v. Gates, 573 F.3d 1306, 1314 (Fed. Cir.), reh'g denied (Fed. Cir. 2009); Barron Bancshares, Inc. v. United States, 366 F.3d 1360, 1375 (Fed. Cir. 2004); Foley Co. v. United States, 11 F.3d 1032, 1034 (Fed. Cir. 1993); Eden Isle Marina, Inc. v. United States, 113 Fed. Cl. at 483–84; Bell/Heery v. United States, 106 Fed. Cl. 300, 309 (2012), aff'd, 739 F.3d 1324 (Fed. Cir. 2014), reh'g and reh'g en banc denied (Fed. Cir. 2014); Sterling, Winchester & Long, L.L.C. v. United States, 83 Fed. Cl. 179, 183 (2008), aff'd, 326 F. App'x 568 (Fed. Cir. 2009). The United States Court of Appeals for the Federal Circuit stated in Massie v. United States:

> In interpreting a contract, "[w]e begin with the plain language." "We give the words of the agreement their ordinary meaning unless the parties mutually intended and agreed to an alternative meaning." In addition, "[w]e must interpret the contract in a manner that gives meaning to all of its provisions and makes sense.'"

Massie v. United States, 166 F.3d 1184, 1189 (Fed. Cir. 1999) (quoting McAbee Constr., Inc. v. United States, 97 F.3d 1431, 1435, reh'g denied and en banc suggestion declined (Fed. Cir. 1996); Harris v. Dep't of Veterans Affairs, 142 F.3d 1463, 1467 (Fed. Cir. 1998) (internal citations omitted)); Jowett, Inc. v. United States, 234 F.3d 1365, 1368 (Fed. Cir.

9

2000) (quoting McAbee Constr., Inc. v. United States, 97 F.3d at 1435; Harris v. Dep't of Veterans Affairs, 142 F.3d at 1467); see also Shell Oil Co. v. United States, 751 F.3d 1282, 1305 (Fed. Cir. 2014) (noting that a contract must be interpreted in context, giving meaning to the document as a whole) (citing NVT Techs., Inc. v. United States, 370 F.3d 1153, 1159 (Fed. Cir. 2004); Metric Constructors, Inc. v. Nat'l Aeronautics & Space Admin., 169 F.3d 747, 752 (Fed. Cir. 1999)); McHugh v. DLT Solutions, Inc., 618 F.3d 1375, 1380 (Fed. Cir. 2010); Giove v. Dep't of Transp., 230 F.3d 1333, 1340–41 (Fed. Cir. 2000) ("In addition, we must interpret the contract in a manner that gives meaning to all of its provisions and makes sense. Further, business contracts must be construed with business sense, as they naturally would be understood by intelligent men of affairs.") (citations omitted); Gould, Inc. v. United States, 935 F.2d 1271, 1274 (Fed. Cir. 1991) (indicating that a preferable interpretation of a contract is one that gives meaning to all parts of the contract rather than one that leaves a portion of the contract "useless, inexplicable, void, or superfluous"); Marquardt Co. v. United States, 101 Fed. Cl. 265, 269 (2011) ("In interpreting contractual language, the court must give reasonable meaning to all parts of the contract and avoid rendering portions of the contract meaningless." (citation omitted)); Enron Fed. Solutions, Inc. v. United States, 80 Fed. Cl. 382, 393 (2008) ("[C]ontext defines a contract and the issues deriving thereof."); Hol-Gar Mfg. Corp. v. United States, 169 Ct. Cl. 384, 388, 351 F.2d 972, 975 (1965) (The language of the "contract must be given that meaning that would be derived from the contract by a reasonable intelligent person acquainted with the contemporaneous circumstances."). "'"In contract interpretation, the plain and unambiguous meaning of a written agreement controls." The contract must be construed to effectuate its spirit and purpose giving reasonable meaning to all parts of the contract.'" Arko Exec. Servs., Inc. v. United States, 553 F.3d at 1379 (quoting Hercules Inc. v. United States, 292 F.3d 1378, 1380–81 (Fed. Cir.), reh'g and reh'g en banc denied (Fed. Cir. 2002) (quoting Craft Mach. Works, Inc. v. United States, 926 F.2d 1110, 1113 (Fed. Cir. 1991))); see also LAI Servs., Inc. v. Gates, 573 F.3d at 1314; Gardiner, Kamya & Assocs., P.C. v. Jackson, 467 F.3d 1348, 1353 (Fed. Cir. 2006) (citations omitted); Medlin Constr. Grp., Ltd. v. Harvey, 449 F.3d 1195, 1200 (Fed. Cir. 2006) (reviewing the contract as a whole to determine the meaning of relevant provisions); Hunt Constr. Grp., Inc. v. United States, 281 F.3d 1369, 1372 (Fed. Cir. 2002) ("We begin with the plain language when interpreting a contract . . . . The contract must be considered as a whole and interpreted to effectuate its spirit and purpose, giving reasonable meaning to all parts." (citations omitted)). "'[I]t has been a fundamental precept of common law that the intention of the parties to a contract control[s] its interpretation.'" Beta Sys., Inc. v. United States, 838 F.2d 1179, 1185 (Fed. Cir. 1988) (quoting Firestone Tire & Rubber Co. v. United States, 444 F.2d 547, 551 (Ct. Cl. 1971)); Alvin, Ltd. v. United States Postal Serv., 816 F.2d 1562, 1565 (Fed. Cir. 1987) ("In the case of contracts, the avowed purpose and primary function of the court is the ascertainment of the intent of the parties."); see also Flexfab, LLC v. United States, 424 F.3d 1254, 1262 (Fed. Cir. 2005) ("[I]ntent is determined by looking to the contract and, if necessary, other objective evidence. In the absence of clear guidance from the contract language, the requisite intent on the part of the government can be inferred from the actions of the contracting officer....").

In the above-captioned case, neither the parties nor the court have identified any material facts in dispute. Rather, the parties' cross-motions for summary judgment raise

10

questions of contract interpretation and statutory construction, which are questions of law amenable to resolution through summary judgment.

Defendant makes several arguments to support its motion to dismiss. First, it makes an argument based on the text of the settlement agreement. Next, the government relies on a distinction between the above-captioned Stathis case, in which the medical malpractice claim arose under the FTCA, 28 U.S.C. §§ 1346, 2671–80 (1982) and the case of Massie v. United States, 166 F.3d 1184, in which the medical malpractice claim arose under the Military Claims Act (MCA), 10 U.S.C. §§ 2731–38 (1994). Defendant cites Helmandollar v. United States, 39 Fed. Cl. 302 (1997), which involved a tort claim arising under the FTCA, to try to argue that the "will pay" language in the Stathis settlement agreement does not constitute a government guarantee regarding the annuity payments. Id. at 304 ("Upon examining the settlement agreement as a whole, we conclude that the phrase 'will pay' is clearly a description of the type of annuity to be purchased and not a guarantee of the amount of money that is actually paid out by the annuity."). Subsequently, however, the United States Court of Appeals for the Federal Circuit wrote in Massie that this construction of the "will pay" language in a settlement agreement should be rejected. The court explained:

> The language specifying that the annuity "will result in distributions" and that the disbursements "shall be paid" is unambiguously mandatory and says unequivocally that the Massies must receive the payments. The government urges an interpretation of these terms that is at odds with their plain meaning. Because the payments are mandatory, the government must be responsible for their payment; no one else is a party to the Agreement. Although the government may delegate its duties under the Agreement to another entity, such as Executive Life Insurance Company, this delegation does not absolve it of its obligations.

Massie v. United States, 166 F.3d at 1190 (citing Olson Plumbing & Heating Co. v. United States, 221 Ct. Cl. 197 (Ct. Cl. 1979)).

The government also tries to rely on Linebarger v. United States, 927 F. Supp. 1280, 1282 (N.D. Cal. 1996), a case which is not binding on this court, to argue that the FTCA settlement agreement gave rise only to an obligation on the part of the government to purchase an annuity, but the government had not "obligated itself to make up any shortfalls in the periodic distributions when the annuity company . . . bankrupted." In response, plaintiffs also relied on a non-binding case, Hendrickson v. United States, which suggests the opposite legal conclusion, by finding that: "the Government is obligated to supplement the diminished payments now being received by the plaintiffs . . . ." Hendrickson v. United States, No. 82–CV– 621T, 2014 WL 2112575, at *7 (W.D.N.Y., May 20, 2014).

Regarding interpretation of a settlement agreement, in Massie v. United States, the United States Court of Appeals for the Federal Circuit found that when the government purchases an annuity as part of a settlement agreement, the government's responsibility does not end with the initial purchase of the annuity, but the government has a continuing

obligation to ensure that future payments are made in accordance with the settlement agreement. Massie v. United States, 166 F.3d at 1190 ("Although the government may delegate its duties under the Agreement to another entity . . . this delegation does not absolve it of its obligations."); see also Annuity Transfers, Ltd. v. United States, 86 Fed. Cl. 173, 180 (2009) (stating in dicta that if annuity payments being made pursuant to a settlement agreement were to cease, the plaintiff could bring a claim against the government) (citing Massie v. United States, 166 F.3d at 1190).

The facts of the Stathis case bear similarity to the facts in Massie. In both cases, plaintiffs filed a breach of contract action against the government for failing to adhere to the payment schedule established in a settlement agreement to compensate for injures alleged to have been caused by medical malpractice at a military hospital during childbirth. Massie v. United States, 166 F.3d at 1186. Additionally, the language of the settlement agreement in the Stathis case concerning distributions of the agreed-to annuity is almost identical to the language to the same effect in Massie. In Massie, the settlement agreement states that the annuity "will result in distributions on behalf of the United States" as detailed in the agreement in the form of monthly and lump sum payments.[4] Id. at 1186–87. In the Stathis case, the settlement agreement states "[t]he annuity will be owned solely and exclusively by the UNITED STATES, and will result in a distribution on behalf of the UNITED STATES according to the following specified plan[.]" (capitalization in original). Additionally, both the Massie agreement and the agreement in the Stathis case required the government to purchase the annuity from an insurance company rated A+ by the A.M. Best Company. Massie v. United States, 166 F.3d at 1187. This court is bound by the Federal Circuit's ruling in Massie. Consequently, the government is not absolved of its responsibilities for the dollar distribution amounts agreed to in the settlement agreement it signed in order to resolve the then-pending litigation in the United States District Court for the District of Columbia.

The government's interpretation of its obligations under the settlement agreement, and its conclusion that the defendant had satisfied its obligation by purchasing the annuity, do not meet the requirements, nor the plain language of the agreement. The Federal Circuit in Massie stated: "[t]he language specifying that the annuity 'will result in distributions' and that the disbursements 'shall be paid' is unambiguously mandatory and states unequivocally that the [plaintiffs] must receive the payments." Massie v. United States, 166 F.3d at 1190. In the Stathis case, the language in the settlement agreement reads: "yearly payments in the amount of ninety thousand and 00/100 Dollars ($90,000.00) per year will be paid to Pauline Stathis and Christina Stathis, a minor, jointly for the remainder of the natural life of Christina Stathis." To distinguish this case from Massie would be to ignore binding precedent and to contravene the intent of the contracting parties when the settlement agreement was executed, which was to provide

---

[4] The agreement in Massie also describes some of the future payments under the annuity as "deferred lump-sum payments." Massie v. United States, 40 Fed. Cl. 151, 156 (1997), rev'd, 166 F.3d 1184 (Fed. Cir. 1999).

12

"yearly payments" in specified amounts for "the remainder of the natural life of Christina Stathis."

Furthermore, even if the court were to find that the language in the settlement agreement is ambiguous, which it does not, the court must construe the ambiguity against the drafter, in this case, the government. If there is a latent ambiguity in the interpretation of a contract, the doctrine of *contra proferentem* applies. According to the United States Supreme Court, "as between two reasonable and practical constructions of an ambiguous contractual provision . . . . the provision should be construed less favorably to that party which selected the contractual language." United States v. Seckinger, 397 U.S. 203, 216, reh'g denied, 397 U.S. 1031 (1970). This doctrine of *contra proferentem* "'pushes the drafters toward improving contractual forms and it saves contractors from hidden traps not of their own making.'" Fry Commc'ns, Inc. v. United States, 22 Cl. Ct. 497, 503 (1991) (quoting Sturm v. United States, 190 Ct. Cl. 691, 697, 421 F.2d 723, 727 (1970)). Similarly, according to the United States Court of Appeals for the Federal Circuit: "When a dispute arises as to the interpretation of a contract and the contractor's interpretation is reasonable, we apply the rule of *contra proferentem*, which requires that ambiguous or unclear terms that are subject to more than one reasonable interpretation be construed against the party who drafted the document." Turner Constr. Co. v. United States, 367 F.3d 1319, 1321 (Fed. Cir. 2004) (citing United States v. Turner Constr. Co., 819 F.2d 283, 286 (Fed. Cir. 1987)); see also States Roofing Corp. v. Winter, 587 F.3d 1364, 1372 (Fed. Cir. 2009); Gardiner, Kamya & Assocs. v. Jackson, 467 F.3d at 1352; HPI/GSA-3C, LLC v. Perry, 364 F.3d 1327, 1334 (Fed. Cir. 2004).

Next, the government attempts to distinguish Massie, brought under the MCA, from the Stathis case, brought under the FTCA, relying on the theory that the FTCA raises sovereign immunity concerns, not raised with the MCA. Defendant argues that the MCA is a not a waiver of the government's sovereign immunity because "[i]t merely confers discretion upon the Secretaries of military departments to settle and pay certain claims under regulations prescribed by those Secretaries . . ." and "[t]here is also no 'claim' for a plaintiff to release in MCA cases because a claimant has no right to litigate a MCA claim . . . ." Defendant further argues that because the FTCA is a limited waiver of the government's sovereign immunity, a settlement agreement under the FTCA must be "final and conclusive" as to the claimant, and this finality extends to "continuing obligations like future periodic payments." In support, defendant points to case law from several federal courts, but not to decisions issued by the United States Court of Appeals for the Federal Circuit. See, e.g., Cibula v. United States, 664 F.3d 428, 431 (4th Cir. 2012); Hull by Hull v. United States, 971 F.2d 1499, 1505 (10th Cir. 1992), cert. denied, 507 U.S. 1030 (1993). Plaintiffs respond that the cases cited by the defendant are not on point. In Hull by Hull v. United States, the United States Court of Appeals for the Tenth Circuit reviewed a decision by the district court to award damages to a plaintiff and place the damages in a trust. Hull by Hull v. United States, 971 F.2d 1499. Before reaching the issue of whether the trust could be fully reversionary, the Tenth Circuit in Hull addressed the relevant jurisdictional statute for cases brought under the FTCA. Id. at 1504. The court indicated that other courts had interpreted the jurisdictional statute, 28 U.S.C. § 1346, as providing that a judgment imposed by a court in a FTCA case could not be structured as ongoing payments. Id. at 1504–05 (citing Frankel v. Heym, 466 F.2d 1226 (3d Cir. 1972)). The

13

Hull court relied on Frankel v. Heym when it reasoned: "(1) the federal waiver of sovereign immunity under the FTCA incorporates the traditional common law principle that awards in civil suits must take the form of common law money judgments, and (2) lump sum money judgments are preferable to judgments that would impose a continuing burden upon the judiciary to supervise the award." Id. at 1504 (citing Frankel v. Heym, 466 F.2d at 1229) (internal citations omitted). The Hull court then took this reasoning one step further, concluding that "courts cannot subject the government to ongoing obligations like the continuing payments proposed in *Frankel*." Id. at 1505. In Cibula, in which the government sought to pay the entire award as a lump sum, the court cited Hull, stating, "courts cannot subject the United States to continuing obligations like periodic payments . . . ." Cibula v. United States, 664 F.3d at 431. However, Hull, Cibula, and this line of reasoning involving up front, lump sum payments are not dispositive in the case currently before the court, in which the court is not imposing a payment structure on the parties, but rather, is enforcing a contract in which the parties voluntarily established structured settlement payments in a settlement agreement. Case law regarding what constitutes a permissible judgment for a court to unilaterally enter during a bench trial is not determinative in situations involving payments that were not structured by the court, but rather, as here, were agreed to by the parties by contract. Further, the Hull, Cibula case law speaks to an instance when the government has agreed to and has paid an entire obligation up front and no structured, future payment schedule to be paid for the plaintiff's "natural life" is included in the judgment. Hull by Hull vs. United States, 971 F.2d at 1505. In the Stathis case, the parties did not determine the entire amount to be paid out under the annuity in future years up front. Moreover, the future payments making up the annuity shortfalls are essential as "deferred lump sum payments," which arguably have deferred the waiver of sovereign immunity until the payments are made, until the end of Christina's life, with the bargained for agreement that plaintiffs will file no further suits on behalf of Christina regarding the underlying tort case.

The government also attempts to bootstrap its sovereign immunity argument and distinction from the Massie case with a textual interpretation of the FTCA, but this is not supported by the plain meaning of the statute. The government points to section 2672 of the FTCA: "Payment of any award, compromise, or settlement in an amount in excess of $2,500 made pursuant to this section or made by the Attorney General in any amount pursuant to section 2677 of this title shall be paid in a manner similar to judgments and compromises in like causes." 28 U.S.C. § 2672. Defendant argues that it cannot enter into a contract that would require future payments because payments made pursuant to the FTCA must be made in a manner similar to the way judgments are paid, and judgments must be made as one-time payments. Defendant argues that "[u]nless the FTCA expressly permits the United States to *pay* for such a settlement in future installments, the United States must accomplish payment in a fixed, lump sum at the time of settlement [and that] [t]he United States cannot pay for a FTCA settlement in future installments because Congress has never authorized paying FTCA judgments or settlements in this manner." (emphasis in original).

Defendant argues that "in an FTCA action, the United States can agree to a settlement including a schedule of periodic payments only if the United States' obligations are discharged in full by payment of a fixed, ascertainable lump sum at the time the

14

settlement is finalized." A few pages later in the same brief, defendant argues that "[b]ecause no judgment in an FTCA case may be *paid* periodically or in future installments, the United States cannot agree to *itself* make or guarantee future periodic payments as part of an FTCA settlement without contravening federal law." (emphasis in original) Furthermore, defendant asserts that when the FTCA refers to "compromises in like causes," it necessarily is referring to other FTCA causes of action because "the only 'like cause' to an FTCA cause of action *is* an FTCA cause of action — no other statutory waiver of immunity and cause of action exists for a tort claim against the United States." Defendant claims that this language, therefore, precludes an interpretation that a payment could be made in any way other than as a lump sum judgment payment. Plaintiffs respond that "[j]udgments and compromises are not synonymous and should be viewed independently [and that] [t]he statute clearly indicates that the Attorney General (or designee) can approve settlements paid in a similar manner to 'compromises in like causes.'"

Plaintiff's interpretation of the FTCA is in accordance with its plain meaning. A "compromise of like cause" can be read to refer to a compromise arising under the MCA or under any common law tort action. Additionally, the payment language of the FTCA does not define a "compromise of like cause" as referring only to a "cause" of action for which sovereign immunity to litigate in court is waived. The phrase, "in a manner similar to judgments and compromises in like causes," also can be understood to signal that the source of payment is similar, rather than that the method of payment is similar. See, e.g., U.S. Gov't Accountability Office, 14 GAO-RB pt. C, s. 3, Office of the General Counsel, Principles of Federal Appropriations Law, Claims against and by the Government, Claims against the Government, Whom and What to Pay (3d ed. 2008), 2008 WL 6969344, at *17 ("Where the applicable statute provides for payment from the Judgment Fund 'in a manner similar to judgments and compromises in like causes,' or 'in accordance with the procedures provided by' section 1304, or pursuant to some other similar language, the procedures of section 3728 will apply.") In accordance with this interpretation, the MCA does not specify the method or frequency of payment, but rather signals the source of payments: "Appropriations available to the Department of Defense for operation and maintenance may be used for payment of claims authorized by law to be paid by the Department of Defense . . . ." 10 U.S.C. § 2732. Defendant suggests that Congress indicated its intent for the payment language to refer to the timing language by harmonizing the fund from which judgments and settlements would be paid. In this context, however, Congress also allowed for the payment language in the FTCA to refer to the source of payments.

In addition to the arguments described above, defendant also contends that "the Government purchases an annuity to accomplish periodic payments as part of an FTCA settlement," which ends its obligation. The Massie case made clear, however, that an annuity only can be a solution for as long as it functions. When the annuity solution falls short, the government still must adhere to its obligations under the settlement agreement. The plaintiffs relied on the calculated amounts in consenting to the settlement agreement, and likely, in making subsequent financial decisions. Here, the annuity premium did not result in the total amount of the settlement to be paid. The agreement clearly states that "[c]ommencing twenty-six (26) years after the purchase of the annuity, yearly payments

15

in the amount of ninety thousand and 00/100 Dollars ($90,000.00) per year will be paid to Pauline Stathis and Christina Stathis, a minor, jointly for the remainder of the natural life of Christina Stathis. Said annual payments will continue to be paid during the natural life of Christina Stathis." In both the Stathis settlement agreement and the Massie settlement agreement, the government did not state the total amount to be awarded under the agreement.[5] Even though the total amount owed by the government was not established in the Stathis agreement, because it was tied to Christina M. Stathis' natural life, the $90,000.00 per year payments are included, as guaranteed, and the government should not be able to claim that it is no longer responsible for the future payments.[6]

Both parties agree that the settlement agreement in this case was amended in May 2002, following the government's authorization to do so. Defendant argues that even though the government's consent was required to change the annuity beneficiary from Pauline and Gus Stathis to the Christina M. Stathis Special Needs Trust, the United States' retainment of ownership was unrelated to a responsibility for making future payments. Defendant argues that, instead, "[r]etaining ownership of the annuity prevents the plaintiff from altering the terms of the settlement and directing that payments be made to someone else without the Government's consent." Plaintiffs argue that the logical conclusion of the government's argument in this respect leads to an absurd result: "all of Defendant's obligations under the agreement would be fulfilled once the annuity contract was purchased, yet once purchased, defendant, as sole owner, could change the beneficiary." Although neither party points to the relevant language of the settlement agreement, there is clear indication in the settlement agreement of the contracting parties' intent for continued responsibility for future payments:

> IT IS HEREBY STIPULATED AND AGREED that the United States of America, as owner of the annuity contract under which the requisite periodic payments will be made, shall cause the future periodic payments to be redirected to the Christina M. Stathis Special Needs Trust at such address or financial institution account as may be provided from time to time.

(capitalization in original)

Finally, the government argues that an FTCA settlement must be "final and conclusive" as to the claimant, and that the "FTCA's terms and conditions, including those

---

[5] Defendant cites several sources, including a United States Court of Appeals for the District of Columbia case and the Government Accountability Office Redbook on Principles of Federal Appropriations Law, in support of its assertion that "'the amount paid . . . should represent the government's maximum obligation and should not exceed the cost of a reasonable fixed settlement.'"

[6] Under different circumstances, namely those in which no settlement agreement is reached between the parties and, instead, damages are determined during a trial, the parties agree that "a judgment for damages after a trial against the United States under the FTCA, or for breach of contract under the Tucker Act, cannot be structured unilaterally as a series of future payments." (emphasis in original).

governing how judgments and settlements must be paid, cannot be expanded by courts or Executive branch officers and employees." While the settlement is final and conclusive as to the tort claims arising out of the alleged medical malpractice, defendant argues plaintiffs seek to enforce the terms of the settlement agreement contract entered into with the government, which fall outside "the final and conclusive" language. The argument that the terms and conditions "cannot be expanded by courts or Executive branch officers and employees" is not dispositive because here, this court is not "expanding" the terms and conditions, but interpreting the contract as a matter of law and enforcing the settlement agreement, contract terms.

Thus, the United States is obligated to meet the terms of the settlement agreement it entered into under the original December 16, 1985 settlement agreement, as amended on May 7, 2002, to ensure future payments are made for the natural life of Christina Stathis. The government breached the agreement when plaintiffs did not receive $90,000.00 in 2014 and indicated that plaintiffs will continue not to receive $90,000.00 annually thereafter. Plaintiffs, however, should not be entitled to double recovery. With this understanding, the parties are to determine whether plaintiff is entitled to, or is currently receiving, any funds from the $100 million ELNY Hardship Fund, referenced in the May 18, 2012 letter from the New York Liquidation Bureau, and jointly submit the appropriate damages amount to the court, so that the court can enter judgment in the case.

## CONCLUSION

For the foregoing reasons, plaintiffs' motion for partial summary judgment on the issue of contract liability is **GRANTED** and defendant's cross-motion for partial summary judgment is **DENIED**.

**IT IS SO ORDERED.**

s/Marian Blank Horn
**MARIAN BLANK HORN**
**Judge**